IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| KEITH F. BELL, PH.D., | Case No. 19-cv-02386 |
| Plaintiff, | Judge Robert M. Dow Jr. |
| v. |  |
| CHICAGO CUBS BASEBALL CLUB, LLC AND JOSHUA LIFRAK, |  |
| Defendants. |  |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# INTRODUCTION

Plaintiff's Response leaves no doubt that he has not and cannot state a viable claim for copyright infringement under applicable law. Indeed, Plaintiff does not dispute that under the Server Test—the operative and binding standard in this Circuit—his claim fails. Nevertheless, Plaintiff attempts to defend his deficient allegations based on irrelevant or distinguishable, non-binding precedent from other jurisdictions. This is insufficient.

Plaintiff has now had two opportunities to right his critically deficient claims, once with the full benefit of Defendants' position and explanation of the law. Plaintiff's amendment failed to correct these deficiencies and his Response to Defendants' Motion to Dismiss makes clear that Plaintiff has no legally sustainable basis on which to proceed. Based on the law in this Circuit, Plaintiff cannot allege an act of direct infringement based on Lifrak's supposed retweet of the preexisting Moawad Tweet; his claims against Defendants therefore fail as a matter of law and should be dismissed with prejudice.

# ARGUMENT

**I.     Plaintiff's Response Confirms That He Cannot State a Claim for Copyright Infringement Under Applicable Law.**

Defendants' Motion rests on the legal standard established in Seventh Circuit precedent: the Server Test adopted in *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012). *See also Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL 3368893, *5 (N.D. Ill. July 8, 2014). Plaintiff does not argue that his claim can survive under this test. Accordingly, to the extent this Court agrees that *Flava Works* is binding and precedential, Defendants' Motion should be granted in its entirety, and the Court need not proceed further. Plaintiff's invocation of decades-old congressional testimony, overruled district-court opinions, and non-binding rulings from other jurisdictions cannot prevail over binding Seventh Circuit law.

A.     *Flava Works* Applies Directly to Plaintiff's Allegations.

In *Flava Works,* the Seventh Circuit limited copyright liability to online users who create an actual copy of a protected work "by uploading it to the Internet." *Flava* Works, 689 F.3d at 757. Plaintiff attempts to avoid this standard by mischaracterizing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160-61 (9th Cir. 2007), the case from which *Flava Works* derives its Server Test. Plaintiff's recitation of *Perfect 10* is unduly narrow and inconsistent with the plain language of that case. Moreover, Plaintiff misses the point: it is the Seventh Circuit's standard in *Flava Works* that ultimately governs, not Plaintiff's narrow reading of the case that guided the Seventh Circuit's decision.

Plaintiff argues that *Perfect 10* is "contextual [sic] to search engine results" and "less applicable" outside of the Ninth Circuit. (Resp. at 5). Plaintiff is wrong on both fronts. While *Perfect 10* involved a search engine's (Google's) liability for linking users to infringing material (*see* 508 F.3d at 1160), the Ninth Circuit's holding clearly transcended those specific facts. For instance, the Ninth Circuit explained:

> A photographic image is a work that is 'fixed in a tangible medium of expression,' for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server . . . ***The image stored in the computer is the 'copy' of the work for purposes of copyright law***.

*Id.* (Emphasis added) (citation omitted). The Ninth Circuit thus made clear that it is the storage location of the work that determines whether a "copy" has been created for purposes of the Copyright Act. This conclusion is in no way limited to search engines.

Moreover, even if Plaintiff's interpretation of *Perfect 10* were accurate, the Server Test was unambiguously expanded by the Seventh Circuit to encompass more than just search-engine results. Indeed, the Seventh Circuit applied the Server Test beyond the search-engine context in *Flava Works*, holding that a website that merely mirrored copyrighted video could not be subject

2

to a claim of copyright infringement. This case supplies the standard for this Circuit. *See Flava Works*, 689 F.3d at 757-58; *see also Ray v. Consol. Rail Corp.*, 721 F. Supp. 1017, 1019 (N.D. Ill. 1989), *aff'd*, 938 F.2d 704 (7th Cir. 1991) (recognizing that this Court "is bound to follow clear Seventh Circuit precedent, notwithstanding any contrary views which may be held by courts in other circuits").

Plaintiff's contention that the Seventh Circuit did not reach the question of whether the Server Test would preclude liability for direct infringement also rings hollow. The appellate court expressly found that the defendants were not contributory infringers *because there was no underlying act of infringement. See Flava Works*, 689 F.3d at 757.[1] In other words, because the defendants did not facilitate the creation of new copies of the plaintiff's electronic works (thereby increasing the "amount of infringement") but merely linked to the third-party sites on whose servers the works were stored, the defendants could not be liable for contributory infringement. *See id.* at 757-58. Furthermore, contrary to Plaintiff's assertion, the Seventh Circuit *did* reach the question of direct infringement. *Id.* at 760 ("***[t]he direct infringers in this case are the uploaders*** [of the infringing videos]; [the defendants are] neither a direct nor a contributory infringer") (emphasis added); *see also id.* (emphasizing again that the "direct" infringers are those who "upload copyrighted videos" without authorization, as opposed to the defendants who link to them).

---

[1] Plaintiff's suggestion that *Flava Works* is not applicable because the lower court's decision was reversed "on other grounds" is also incorrect. (Resp. at 5). The Seventh Circuit vacated the district-court's preliminary injunction, holding that the plaintiff had not established likelihood of success on the merits with respect to establishing copyright infringement. *See Flava Works*, 689 F.3d at 755, 762. Judge Posner's opinion rested almost entirely on the fact that the defendants did not host the infringing material on their servers but merely provided "a connection between the server that hosts the video" and the user's computer. *Id*. at 757. Thus, far from reversing on "other grounds," the Seventh Circuit directly repudiated the lower court's departure from *Perfect 10* by repeatedly citing to the case and by expressly basing its appellate ruling on *Perfect 10*'s Server Test. (See, e.g., id. at 757-61).

3

To the extent any doubt existed about *Flava Works*'s applicability, this Court subsequently recognized *Flava Works*—including the Server Test—as binding precedent in *Leveyfilm*. *See* 2014 WL 3368893, at *5 ("In accordance with the Seventh Circuit's decision in *Flava Works*, since there is no evidence in the record to allow a reasonable juror to conclude that the [infringing photo] was ever contained on [the defendant's website's] servers, [the website] did not copy the photo and [the defendant] cannot be liable under the Copyright Act") (emphasis added). Again, this holding clearly was not limited to search-engine results. *Leveyfilm* repeatedly recognized that *Flava Works* involved a claim for contributory infringement, which the Seventh Circuit correctly observed requires a predicate act of direct infringement. *See id.* at *6, 6 n.4, 7, and 13.[2] *Flava Works* and *Leveyfilm* are perfectly clear: providing a link to infringing material housed on a third-party's server does not, without more, implicate the Copyright Act in the Seventh Circuit. *See Flava Works*, 689 F.3d at 757-760; *Leveyfilm*, 2014 WL 3368893, at *5-7. A simple retweet hosted solely on Twitters' servers cannot support a copyright-infringement claim against Defendants.[3]

    B.    <u>Plaintiff's Reliance on Non-Binding Cases from Other Circuits Is Unpersuasive.</u>

Tellingly, instead of addressing applicable Seventh Circuit law (or appropriately distinguishing it), Plaintiff devotes four full pages of his opposition to congressional testimony from the 1970s, district-court cases from other venues (primarily in the Second Circuit), and at least one copyright treatise. (*See id.* at 3-5, 6-7). Plaintiff's selective discussion of copyright law's

---

[2] Plaintiff makes much of the Seventh Circuit's determination that the defendants might have been contributorily liable for "encouraging" direct infringement, though there was no evidence of such encouragement in the record. *See* Resp. at 6 n.8, *Flava Works* 689 F.3d at 758. Of course, the court specified that only encouragement of the "direct infringers" (i.e., "**the uploaders of the copyrighted work**") could result in such contributory liability—a critical distinction that Plaintiff fails to grasp. *Id.* (Emphasis added).

[3] *Flava Works* also noted that the Digital Millennium Copyright Act was intended to protect internet service providers from liability for merely "referring or linking" to infringing material. *See Flava Works*, 689 F.3d at 758. This is why Defendants reference it in their Motion. (*See* Resp. at 13-14).

history and development in other jurisdictions cannot overcome clear Seventh Circuit precedent. *See Ray*, 721 F. Supp. at 1019; *see also Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 515 (N.D. Ill. 2018) (disfavoring efforts to minimize Seventh Circuit precedent and recognizing that this Court is not bound by the opinions of other district or circuit courts); *Hudgins v. Total Quality Logistics, LLC*, 2017 WL 514191, at *2 (N.D. Ill. Feb. 8, 2017) (same). Out of an abundance of caution, Defendants nevertheless address Plaintiff's citations below.

Plaintiff begins by referencing the Copyright Act's "plain language," supplemented by quotations from the 1976 congressional record, including testimony from the former Register of Copyrights. (Resp. at 3-4). But neither the statutory language nor the congressional record Plaintiff cites says anything about what constitutes a "copy" for purposes of the Copyright Act, let alone as applicable to the circumstances here. *Id.* That question was left open for judicial interpretation—prudently so, given the rapid changes in information-sharing technology since 1976. For purposes of this case, that question has been answered in the Seventh Circuit through *Flava Works* and its progeny. *See Flava Works* 689 F.3d at 757 (a user "makes no copy of the copyrighted video" unless she uploads it to the internet). Even if this Court were to conclude that the bare congressional record cited is inconsistent with *Flava Works,* this Court should still dismiss Plaintiff's complaint based on currently binding precedent so that Plaintiff can file an appeal. *See Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) ("A district judge who thinks new evidence or better argument 'refutes' one of our decisions should report his conclusions while applying the existing law of the circuit").

Plaintiff's reliance on district-court decisions[4] from other jurisdictions is similarly unavailing. Again, even if those decisions were compelling, they could not change the law of this

---

[4] Plaintiff also cites two Supreme Court cases, neither of which addresses the Server Test or does anything to disturb the Seventh Circuit's ruling in *Flava Works*. (See Resp. at 7). In fact, both cases predate *Leveyfilm*, which inarguably

5

circuit. *See Laudicina*, 328 F.R.D. at 515; *Hudgins*, 2017 WL 514191 at *2. Importantly, however, even on the merits those cases do change the outcome here. Nor do they suggest that a party can be liable for copyright infringement without actually hosting the infringing content. *See Leader's Inst., LLC v. Jackson*, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017) (noting that defendant's website contained a code that instructed users' browsers to "display the [infringing] content as if it were [defendants'] own");[5] *Live Face on Web, LLC v. Smart Move Search, Inc.*, 2017 WL 1064664, at *1 (D.N.J. Mar. 21, 2017) (denying motion to dismiss in light of allegation that defendants' website caused a copy of plaintiff's actual software code (as opposed to a mere image or video) to be distributed to each website visitor); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1172 (N.D. Cal. 2019) (reserving judgment as to whether underlying code was saved on the website for purposes of Server Test). Even *Goldman v. Breitbart News Network, LLC*, which appears to be the key case on which Plaintiff relies, is inapplicable here.[6] 302 F. Supp. 3d 585, 586 (S.D.N.Y. 2018). In that case, the defendants affirmatively coded and embedded a copyrighted photo on their website. *Id.* at 587-88. The Court held that the defendants' creation of code that displayed the image could be the source of a claim because "defendants' websites

---

followed the Seventh Circuit in applying the Server Test. Plaintiff cites to *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014) for the proposition that the Supreme Court was unconcerned with the delivery mechanism of the copyrighted content. (Resp. at 7). However, the *Aereo* case dealt with the use of antennas to receive and translate broadcasts of copyrighted material for transmission over the internet. Not only was the defendant actively using "its technology" to transmit the content, it was also using "its own equipment, housed in a centralized warehouse." *Aereo*, 573 U.S. at 442-43. Here, neither Defendant Lifrak nor the Chicago Cubs are accused of using their own technology to transmit the Moawad Tweet. Similarly, Plaintiff's citation to *Metro-Goldwyn-Mayer Studios, Inc. v Grokster, Ltd.*, 545 U.S. 913 (2005) is unpersuasive. There, the court held that "one who distributes a device with the object of promoting its use to infringe copyright . . . is liable for the resulting acts of infringement by third parties." *Id.* at 936-37. Plaintiff has not alleged that the Chicago Cubs distributed any devices that would make it directly liable.

[5] Lifrak, on the other hand, did not "display" the Moawad Tweet on his own website or otherwise host any infringing content on a personal server. Plaintiff does not allege otherwise.

[6] Plaintiff's Response appears to have been copied wholesale from the court's opinion in *Goldman*, including its citation to the 1976 congressional record. (*Compare Goldman*, 302 F. Supp. 3d at 589 *with* Resp. at 3-4). Plaintiff's decision to recycle the court's argument only underscores his inability to find a basis under applicable law for copyright infringement.

actively took steps to 'display' the image." *Id.* at 593. The Court recognized that, unlike in the Seventh and Ninth Circuits, the Server Test did not apply and focused on the defendants' active creation of the websites to display the image. Here, in contrast, Lifrak did not host, create, duplicate, or display the Moawad Tweet on his own website or platform. Rather, it is undisputed that the entirety of the alleged conduct took place on Twitter. Thus, even if applicable, *Goldman* would not change the outcome here.

**II.     Plaintiff's Claims Against the Chicago Cubs Cannot Stand.**

Plaintiff pursues the Chicago Cubs on vicarious- and contributory-infringement theories. Those claims fail on their face when, as here, the complaint fails to establish an initial act of direct infringement. *See Hart v. Amazon.com, Inc.*, 2015 WL 8489973, at *5 (N.D. Ill. Dec. 8, 2015). Even if Plaintiff could state a claim for direct infringement, his Response leaves no doubt that the Chicago Cubs does not belong in this suit. Plaintiff still has not alleged that the Chicago Cubs was even aware of (let alone played a meaningful role in or benefited from) Lifrak's retweet of the Moawad Tweet. Consequently, Plaintiff's claim against the Chicago Cubs should be dismissed with prejudice.

     A.     <u>Plaintiff Concedes That He Cannot in Good Faith Assert Supervisory Authority by the Chicago Cubs with Respect to the Tweet at Issue.</u>

The starting point for even considering the Chicago Cubs in this dispute requires supervisory authority or other control over Lifrak's tweets. Such control does not exist, as even Plaintiff admits: "it is for the moment unclear as to the full extent of [the Chicago Cubs's] supervisory authority . . . ." (Resp. at 10). Oddly, Plaintiff attempts to establish this element by pointing to Lifrak's "social media relationships" with various Chicago Cubs players or

7

employees.[7] (*Id.*). This allegation establishes only that Lifrak maintained certain personal relationships with these individuals; there is no reason to conclude that such relationships were not entirely personal in nature (indeed, given that they encompass only a small fraction of the franchise's employees, this is the most logical conclusion). Plaintiff fails to allege any indicia typically associated with supervisory authority, like the ability to police or restrict Lifrak's tweeting or the existence of joint business venture. *See Flava Works, Inc. v. Gunter*, 2011 WL 1791557, at *5 (N.D. Ill. May 10, 2011); *Design Craft Fabric Corp. v. K-Mart Corp.*, 1999 WL 1256258, at *3 (N.D. Ill. Dec. 21, 1999). Plaintiff's generic pleading of an employment relationship also cannot support a claim against the Chicago Cubs. *Id.* In short, Plaintiff's amended complaint does not allege facts establishing supervisory authority, and he cannot rectify that failing in a response to the Motion.

Plaintiff's claim that the Chicago Cubs benefited financially because Lifrak's retweet acted as "a draw for customers" is even more tenuous. (Resp. at 9). The Chicago Cubs generates revenue through ticket and merchandise sales. The notion that the team relies on its employees' social-media accounts to turn a profit is incredulous. Yet, Plaintiff claims that because Lifrak's Twitter following has increased since retweeting the Moawad Tweet (while at the same time asserting that the increase is related to players and other employees, not fans), the Chicago Cubs has an increased audience for Lifrak's "team-associated social media traffic." (*Id.*). While wholly illogical, this still does not translate to a tangible financial benefit for the Chicago Cubs. Plaintiff has failed to plead facts *causally linking* Lifrak's increased Twitter popularity to any *direct financial benefit* by the

---

[7] Plaintiff's reliance on MLB's supposed "Social Media Policy" is not alleged in the amended complaint and is not helpful to Plaintiff. (Resp. at 10-11). At most, that policy establishes that the Chicago Cubs requires its employees to refrain from violating state or federal law, not that it has the authority to supervise their personal Twitter accounts.

Chicago Cubs. By this point, Plaintiff is well aware that such claims are insufficient. *See Bell v. Pacific Ridge*, et al., Case No. 3:19-cv-01307-JST (N.D. Ca. 2019); (Dkt. 22 at 13).

This Court's opinion in *GC2 Inc. v. Int'l Game Tech. PLC* only highlights Plaintiff's failing. There, the defendants used infringing material (the plaintiff's artwork) in videos for electronic slot machines sold directly to consumers. 255 F. Supp. 3d 812, 825 (N.D. Ill. 2017). Because the "availability of [the] infringing work" was thus a "contributing factor" in consumers' "decision to purchase [the] product or service," a direct financial benefit existed. *Id.* Obviously, that is not the case here. Plaintiff has not established that Lifrak's Twitter following has generated a single dollar for the Chicago Cubs, or that his increased audience is even the result of the Moawad Tweet (as opposed to, say, the Chicago Cubs's world-championship season). Plaintiff's attempt to expand vicarious liability to organizations based on their employees' personal social-media network fails on this basis as well.

  B. <u>The Cubs Did Not Contribute in Any Way, Let Alone Meaningfully, to Lifrak's Personal Retweet.</u>

Equally lacking in Plaintiff's Response is any support for his contributory-infringement claim. Indeed, Plaintiff all but concedes he cannot adequately allege it. (*See* Resp. at 11-12). Plaintiff simply rehearses the sparse allegations of his amended complaint, which baldly asserts the elements of contributory copyright infringement without any mention of how the Chicago Cubs "materially contributed" to Lifrak's supposedly infringing conduct or how it "encourages" or "contributes" to that conduct. (*Id.* at 12). Even under federal notice-pleading standards, Plaintiff must do more. *See Seals v. Compendia Media Grp.*, 2003 WL 731369, at *7 (N.D. Ill. Feb. 28, 2003) (dismissing contributory-infringement claim where plaintiff did not allege facts to support his conclusion that defendant company's officers "knew of, and induced, caused, or materially

9

contributed to" infringing conduct); (*see also* Dkt. 22 at 10-12).[8] Without some discernible factual allegations establishing that the Chicago Cubs knew about or contributed to Lifrak's supposed infringement, Plaintiff's claim cannot survive. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### III. While Plaintiff Need Not Prove Willfulness at This Stage, He Must Still Allege Facts to Support It.

Plaintiff's Response appears to assume that he need not plausibly allege willfulness at this stage and that this element of his claims is somehow exempt from federal pleading requirements. (*See* Resp. at 12-13). That is not the case. While it is true that Plaintiff need not prove his claim now, he must still adequately allege "the additional intent element" required for claims of willful infringement. *Design Basics, LLC v. WK Olson Architects, Inc.*, 2018 WL 3629309, at *4 n.6 (N.D. Ill. July 31, 2018); *see also Twombly*, 550 U.S. at 557 (a complaint must contain "enough facts to state a claim for relief that is plausible on its face"). By merely reciting the stock allegations from his other complaints around the country, Plaintiff has not met this burden. *See*, e.g., *Pacific Ridge, et al.*, Case No. 3:19-cv-01307-JST (N.D. Ca. 2019) (Dkt. 17, ¶¶ 42-43). Even if Plaintiff's amended complaint could survive Defendants' Motion (and it cannot), his allegations of willfulness should be dismissed.

### CONCLUSION

For the reasons outlined above, Plaintiff has not stated, and cannot state, any claim against Defendants Lifrak or the Chicago Cubs for copyright infringement. As a result, Defendants respectfully request that this Court dismiss Plaintiff's amended complaint, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

---

[8] The sole case Plaintiff cites in support of his contention that he need only recite the bare elements of contributory infringement contains no substantive legal or factual analysis and is unhelpful. *See Navistar, Inc. v. New Baltimore Garage, Inc.*, 2012 WL 4338816, at *10 (N.D. Ill. Sept. 20, 2012).

Respectfully submitted,

By: */s/ Kal Shah*
Kal K. Shah
Trevor J. Illes
BENESCH FRIEDLANDER COPLAN & ARONOFF
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312.212.4949
Email: kshah@beneschlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on this 26th day of September, 2019, I electronically filed the foregoing ***Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Amended Complaint*** with the Clerk of the Northern District of Illinois via its CM/ECF system, which will send a notice of electronic filing to all registered participants.

*/s/ Kal K. Shah*

*Attorney for Defendants*
