# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEITH F. BELL, Ph.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-2386 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CHICAGO CUBS BASEBALL CLUB, ) | |
| LLC and JOSHUA LIFRAK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keith F. Bell, Ph.D. ("Plaintiff") brings suit against Defendants the Chicago Cubs Baseball Club (the "Cubs") and Joshua Lifrak ("Lifrak") (collectively, "Defendants") for copyright infringement. Currently before the Court is Defendants' motion to dismiss the governing amended complaint. See [21]. For the following reasons, Defendants' motion to dismiss [21] is granted in part and denied in part. The claim for contributory copyright infringement and the claim for direct copyright infringement as to the Cubs only are dismissed. The claim for vicarious copyright infringement and the claim for direct copyright infringement against Lifrak will be allowed to proceed. This case is set for status hearing on February 20, 2020 at 9:00 a.m.

## I. Background[1]

According to the amended complaint, Plaintiff is an accomplished athlete and coach and "an internationally-recognized sports psychology and performance consultant" who has worked with hundreds of sports teams and spoken at "national and international coaching symposia." [18]

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's amended complaint. See [18]; *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

at 2-3. Plaintiff has also "authored and had published 10 books and over 80 articles relating to sports psychology and sports performance" and written columns for various sports periodicals. *Id*. at 3. At issue in this case is Plaintiff's book entitled "Winning Isn't Normal." *Id*. Plaintiff wrote the book in 1981 and it was first published in 1982. According to Plaintiff, "[t]he book has enjoyed substantial acclaim, distribution, and publicity." *Id*. Plaintiff is the sole author of the book and continues to own all rights in the work.

Plaintiff holds a copyright registration for "Winning Isn't Normal," which was issued by the U.S. Copyright Office on September 21, 1989 (registration number TX-0002-6726-44). Since Plaintiff published the book, "he has and continues to promote, distribute, offer for sale, and sell numerous copies of the work." [18] at 3. As part of these efforts, Plaintiff creates, markets, and sells works derivative of "Winning Isn't Normal," such as posters and t-shirts that display the following passage from the book, which Plaintiff labels the "WIN Passage":

> Winning isn't normal. That doesn't mean there's anything wrong with winning. It just isn't the norm. It's highly unusual.
>
> Every race only has one winner. No matter how many people are entered (not to mention all those w o [sic] tried and failed to make cuts), only one person (or one relay) wins each event.
>
> Winning is unusual. As such, it requires unusual action.
>
> In order to win, you must do extraordinary things. You can't just be one of the crowd. The crowd doesn't win. You have to be willing to stand out and act differently.
>
> Your actions need to reflect unusual values and priorities. You have to value success more than others do. You have to want it more. (Now, take note! Wanting it more is a decision you make and act upon - not some inherent quality or burning inner drive or inspiration!) And you have to make that value a priority.
>
> You can't train like everyone else. You have to train more and train better.
>
> You can't talk like everyone else. You can't think like everyone else. You can't be too willing to join the crowd, to do what is expected, to act in a socially accepted

> manner, to do what's "in." You need to be willing to stand out in the crowd and consistently take exceptional action. If you want to win, you need to accept the risks and perhaps the loneliness ... because winning isn't normal!!

[18-2] at 2. According to Plaintiff, the WIN Passage is viewed by him "and others as the heart of [his] literary work" "Winning Isn't Normal." *Id*. at 4. Plaintiff obtained a separate copyright registration for the WIN Passage (registration no. TX 8-503-571).

Plaintiff also owns the domain winningisntnormal.com, which points to a website where Plaintiff offers the book and derivative works for sale. Further, Plaintiff obtained a trademark registration for "Winning Isn't Normal" for "[p]rinted matter, namely, non-fiction publications, *** books, booklets, pamphlets, articles, manuals and posters in the field of sports, fitness, and competitive performance and psychology" (registration no. 4,630,749). [18] at 5. Plaintiff alleges that the mark "Winning Isn't Normal" "has become widely associated" with him and his printed materials and related goods and that the mark "is indicative to consumers that printed material and related items bearing" the mark "originate from or are affiliated with, sponsored, or approved" by Plaintiff. *Id*.

This case involves Defendant Lifrak's "retweet" of the WIN passage on Twitter. Lifrak is employed by the Cubs as the director of its Mental Skills Program. Lifrak's job responsibilities "include issues that generally fall within sports psychology." [18] at 5. At the time relevant to this action, Lifrak maintained an active Twitter account and had more than 1,000 "followers." Around May 2016, Lifrak allegedly posted an exact copy of the WIN passage on his Twitter account. The print-out from Lifrak's Twitter account, which Plaintiff attached as Exhibit C to the amended complaint, shows that Lifrak's tweet was a "retweet" of a tweet from Moawad

3

Consulting. [18-3].[2]  The printout shows that the tweet did not attribute the WIN passage to Plaintiff. See *id*. Lifrak's retweet was "liked" at least 14 times and "retweeted" at least 9 times. [18] at 7. According to Plaintiff, Lifrak's retweet "was an act of copying by Defendants under applicable law *** because actual copies of 'Winning Isn't Normal' were made, which existed on servers, devices, and computer systems owned or controlled by Defendants." *Id*. at 6-7.

According to Plaintiff, the Cubs are responsible for Lifrak's Twitter activity. Plaintiff alleges that Lifrak maintains the Twitter account "in the course and scope of his employment with [the] Cubs and his followers include many players and coaches" within the Cubs organization. [18] at 6. Plaintiff further alleges that at all relevant times, the Cubs "possessed the right and ability to supervise [Lifrak's] infringing activity," had "a direct financial interest in [Lifrak's] infringing activities," and can and should have "exercised its right and ability to supervise the activities" of Lifrak on Twitter. *Id*. Plaintiff elaborates that the Cubs "knew that individuals associated with its organization" follow Lifrak on Twitter and that Lifrak's infringing behavior "concerned the same subject matter that *** Lifrak is paid to work on as part of his employment" with the Cubs. *Id*. Plaintiff alleges on information and belief that the Cubs knowingly "induced, caused, and materially contributed to" Lifrak's allegedly infringing activity, because the Cubs "know[] about, encourage[], and contribute[] to the exact activity *** that is at issue in this case." *Id*. In addition, Plaintiff alleges, "Defendants' infringements of [his] copyrighted works were commercial in nature as they were meant to publicize and promote Defendants, and to carry out the purposes of Defendant Lifrak's job with Defendant Cubs for which he is compensated because he brings economic benefit to Defendant Cubs and himself." *Id*. at 7. Plaintiff further alleges that

---

[2] According to Defendant, Plaintiff also sued Moawad for copyright infringement for the original tweet; that case was eventually settled. See [22] at 7 (citing *Bell v. Moawad Group LLC, et al.*, No. 17-cv-02109 (D. Ariz. 2018)).

4

"Defendants' infringement profoundly effects the market for [his] work because people will not have to purchase his book and his other materials that incorporate the WIN passage on his web site." *Id*.

Based on these allegations, Plaintiff asserts three claims: (1) a claim for direct copyright infringement against both Defendants; (2) a claim for vicarious copyright infringement against the Cubs; and (3) a claim for contributory copyright infringement against the Cubs. Currently before the Court is Defendants' motion to dismiss the amended complaint for failure to state a claim.

## II. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the amended complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). In addition, it is proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

**III. Analysis**

    **A.    Direct Copyright Infringement**

Count I of the amended complaint alleges a claim for copyright infringement against "Defendants." [18] at 8-9. "To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) (quoting *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007)).

In their motion to dismiss, Defendants do not challenge Plaintiff's allegation that he holds valid copyrights to "Winning Isn't Normal" and the WIN passage. Instead, their motion to dismiss focusing on the "copying" element of Plaintiff's copyright claim. To the extent that Plaintiff intends to bring his direct copyright infringement claim against the Cubs, that claim is dismissed because the amended complaint does not allege any facts suggesting that "the Cubs" themselves created a copy of Plaintiff's WIN passage. Instead, the amended complaint alleges that Lifrak created the copy by "retweeting" the Moawad tweet.

Whether Lifrak himself created a "copy" is a more difficult question which, ultimately, this Court is unable to resolve at this early stage of the case. Defendants argue that, pursuant to the standard set out in *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012), and its progeny, "a new copy is created *only* when a third party stores the infringing material *on its own servers*." [22] at 10; see *Flava Works*, 689 F.3d at 762 (holding that defendant's electronic linking of users of its website to the plaintiff's copyrighted videos could not support a claim for copyright infringement because the defendant did not actually create a new copy of the material on its servers, but merely linked to material hosted on third-party servers, albeit deceptively). By contrast, Defendants contend, "a mere link or direction back (like a retweet) to the original source

6

of a pre-existing post *is not* a new copy and, therefore, does not give rise to an independent infringement claim." *Id*. (citing *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL 3368893, *5 (N.D. Ill. July 8, 2014) (holding that because defendant's website linked to—but never downloaded—plaintiff's copyrighted photo onto its own servers, the site "did not copy the photo," and its owner could not be liable for infringement)). Defendants argue that a retweet cannot, as a matter of law, generate an "actionable copy" of copyrighted material, because "[t]he instructions, storage, management, and reflection back to the original tweet all were governed exclusively by Twitter and took place exclusively on Twitter's servers." [22] at 11.

Assuming without deciding that Defendants' statement of the governing legal standard is correct, the Court nonetheless cannot resolve this issue on a motion to dismiss because it rests on facts that are not alleged in—and are contrary to—the governing amended complaint. According to the amended complaint, Lifrak's act of retweeting the Moawad tweet resulted in "actual copies of 'Winning Isn't Normal' [to be] made, which existed on servers, devices, and computer systems owned or controlled by Defendants." [18] at 6-7. Plaintiff's allegations may very well be wrong as a factual matter, but at this stage of the case, the Court cannot simply rely on Defendants' technological explanation of Twitter to dismiss Plaintiff's claim. Defendants contend that the Court may also take judicial notice of information contained on various Twitter-operated web pages explaining how a "retweet" works. See [22] at 11, n.4 (citing *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000)). It is not clear that these web-based explanations constitute "public records" of which it is appropriate to take judicial notice. See, e.g., *Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (noting that even matters of public record cannot be judicially noticed unless "the accuracy of those documents reasonably cannot be questioned"). But even if they were, none of the sources cited by Defendants address the question of whether

7

someone who retweets an original tweet might somehow also store the underlying copyrighted material on his or her own server. See [22] at 12. Although the Court must deny Defendants' motion to dismiss the copyright infringement claim against Lifrak, if and when Defendants generate a factual record to support their contention that judgment in their favor as a matter of law is appropriate, they may move for summary judgment at any time.

### B. Contributary Copyright Infringement

Count III of the amended complaint alleges a claim for contributory copyright infringement against the Cubs. "'Liability for contributory infringement will be imposed when a defendant, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Myers v. Harold*, 279 F. Supp. 3d 778, 796 (N.D. Ill. 2017) (quoting *Marobie–FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*, 983 F. Supp. 1167, 1178 (N.D. Ill. 1997)).

Defendants argue that Plaintiff's claim for contributory copyright infringement must be dismissed because, among other reasons, Plaintiff fails to allege any facts that plausibly suggest that the Cubs had any "knowledge of" Lifrak's allegedly "infringing activity." *Myers*, 279 F. Supp. 3d at 796. The Court agrees. "The knowledge element for contributory copyright infringement is met in those cases where a party has been notified of specific infringing uses of its technology and fails to act to prevent future such infringing uses, or willfully blinds itself to such infringing uses." *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 886 (N.D. Ill. 2005); see also *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929 (2005) ("One infringes contributorily by *intentionally* inducing or encouraging direct infringement[.]" (emphasis added)). The amended complaint contains no facts from which it could plausibly be inferred that the Cubs knew that Lifrak was infringing Plaintiff's copyright, yet failed to act to stop

the infringement or willfully blinded themselves to the infringement. The print-out of Lifrak's retweet (which is attached as an exhibit to the amended complaint) shows that Moawad Consulting's tweet does not attribute the WIN passage to Plaintiff. Therefore there is no apparent way that the Cubs (or Lifrak, for that matter) would have known that Lifrak's retweet infringed Plaintiff's copyright. Plaintiff does not allege, for instance, that he notified the Cubs (or Lifrak) that they were using his copyrighted material without permission and Defendants refused to take the retweet down. Therefore, Defendants' motion to dismiss the claim for contributory copyright infringement is granted. See *Monotype Imagine*, 376 F. Supp. 2d at 886-87 (holding that even if distributors of font software established that competitor's licensees had engaged in acts of infringement of distributors' software, they did not show that competitor knew its licensees were using its font technology to do so, as required for competitor's liability for contributory copyright infringement).

### C. Vicarious Liability for Copyright Infringement

Count II of the amended complaint alleges a claim for vicarious liability for copyright infringement against the Cubs. "To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that 'the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.'" *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 824 (N.D. Ill. 2017) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)). "Unlike contributory liability, one can be liable for vicarious copyright infringement even without knowledge of the infringement." *In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634, 654 (N.D. Ill. 2002); see also *Metro-Goldwyn-Mayer Studios*, 545 U.S. at 931 n.9 (explaining that the vicarious liability theory "allows imposition of liability when

the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement").

In their motion to dismiss, Defendants challenge the sufficiency of Plaintiff's pleading as to both the supervision element and the direct financial interest element of the vicarious liability claim. At this stage, the Court is not persuaded by either argument and therefore will allow Plaintiff's claim for vicarious liability for copyright infringement to proceed. With that said, the Court is skeptical that Plaintiff will be able to prove the second element of the claim.

Concerning the supervision element, Defendants argue that "Plaintiff has not pleaded any facts establishing that the Chicago Cubs maintains the right to police or restrict Lifrak's personal social-media presence, or that it otherwise regulates the content of his Twitter feed in any way." [22] at 17. But the amended complaint alleges just that: "At all relevant times, Defendant Cubs possessed the right and ability to supervise, control, or stop the infringing conduct described herein as it occurred over the course of Defendant Lifrak's use of his social media accounts in association with Defendant Cubs." [18] at 9, ¶ 48. Taking Plaintiff's allegations as true, as the Court must for purposes of a motion to dismiss, Plaintiff has adequately alleged that the Cubs have "the right and ability to supervise and control" Lifrak's alleged infringement. *GC2*, 255 F. Supp. 3d at 824; see also *Porter v. Combs*, 105 F. Supp. 3d 872, 879 (N.D. Ill. 2015) (logo designer's allegations that owner of lacrosse club had supervisory authority over club's infringing activities was sufficient to survive motion to dismiss; plaintiff not required to plead specific facts concerning "extent and nature" of defendant's supervisory authority).

The Court now turns to the "financial interest" element of Plaintiff's claim. For purposes of a vicarious copyright infringement claim, "a financial benefit exists where there is evidence of a direct financial gain *or* that the 'availability of infringing material acts as a draw for customers.'"

*GC2*, 255 F. Supp. 3d at 825 (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)) (emphasis added). The second type of financial interest exists "where the availability of an infringing work is a contributing factor in a consumer's decision to purchase a product or service." *Id*. Importantly, "[t]he size of the 'draw' relative to a defendant's overall business is immaterial.'" Id. (citing *Perfect 10*, 847 F.3d at 673). "Under either method of proof, '[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits.'" *Id*. (quoting *Ellison*, 357 F.3d at 1079); see also *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *4 (N.D. Ill. June 27, 2012).

Defendants argue that the amended complaint does not identify "any financial benefit inuring to the Chicago Cubs as a result of Lifrak's tweet." [22] at 18. However, Plaintiff alleges in ¶ 49 of the amended complaint that "Defendant Cubs had a direct and financial interest in Defendant Lifrak's infringing activity, including without limitation receiving the benefit of Defendant Lifrak's social media audience and the promotional engagement generated thereform [sic] based on Defendant Lifrak's social media activity." [18] at 9. In other words, Plaintiff's theory appears to be that all of Lifrak's tweets increase the exposure of the Cubs and encourage Lifrak's followers to buy services and products from the Cubs, such as tickets to baseball games or Cubs-licensed apparel and other items. Defendants question the plausibility of this theory, arguing that "the retweet in question [did not] contain any overt advertising or even mention the Chicago Cubs." [22] at 18-19. However, the print-out from Lifrak's Twitter account shows that Lifrak identifies himself as "Director of The Mental Skills Program of the Chicago Cubs," and uses a photo of the Cubs' sign at Wrigley Field as the banner for his Twitter page. Therefore, it is not wholly implausible to presume that Lifrak's Twitter activity is intended to promote the Cubs.

11

At the same time, Plaintiff may find it difficult to marshal any actual evidence that Lifrak's single retweet of the WIN passage resulted in a direct financial gain to the Cubs or actually drew customers to the Cubs. See, e.g., *Monotype Imaging, Inc. v. Bitstream, Inc.*, 2005 WL 936882, at *7 (N.D. Ill. Apr. 21, 2005) (granting summary judgment for defendant on plaintiff's vicarious copyright infringement claim, where plaintiffs failed to come forward with "any evidence demonstrating" that defendant's allegedly infringing use of plaintiff's software acted as "a 'tremendous draw'" for defendant's customers). But for purposes of Defendants' motion to dismiss, Plaintiff's allegations are sufficient—though just barely—to allow the contributory copyright infringement claim to proceed. See *Porter*, 105 F. Supp. 3d at 879 (explaining that to survive a motion to dismiss, plaintiff was not required to plead "specific financial gains" earned by owner of lacrosse club due to club's infringing use of plaintiff's logo on apparel, merchandise and team equipment).

### D. Willful and Intentional Conduct

The amended complaint alleges that Defendants' copying of the WIN passage "was done willfully and intentionally in violation of federal copyright law, with knowledge that no agreement had been reached with Plaintiff regarding such copying, and with knowledge that neither a license nor an assignment had been granted to Defendants allowing them to copy or use the Infringed Works." [18] at 8. Defendants argue that any allegations of willfulness should be dismissed because "Plaintiff has not even alleged that Lifrak, much less the Chicago Cubs, knew (and if so, how) that the Moawad Tweet contained copyrighted material." [22] at 19. Plaintiff responds that willfulness is not a required element of any of his claims and, therefore, this is not a proper ground for a motion to dismiss. Rather, Plaintiff explains, allegations of willfulness go "to the question of whether [Plaintiff] is entitled to increased damages pursuant to 17 U.S.C. § 504(c)(2)." [27] at

16. In reply, Defendants assert that "[w]hile it is true that Plaintiff need not prove his claim now, he must still adequately allege 'the additional intent element' required for claims of willful infringement." [28] at 11 (citing *Design Basics, LLC v. WK Olson Architects, Inc.*, 2018 WL 3629309, at *4 n.6 (N.D. Ill. July 31, 2018)).

Plaintiff is correct that his claims are not subject to dismissal under Rule 12(b)(6) based on a lack of factual detail supporting his allegation that Defendants infringed his trademarks knowingly and willfully. Nonetheless, the Court agrees with Defendants that there is nothing in the amended complaint to suggest that either Defendant had any idea that the Moawad tweet contained copyrighted material. Further, the Court is skeptical that Defendant will ever be able to establish knowledge or willfulness, given that the Moawad tweet did not attribute the WIN quote to Plaintiff. While this is not a basis for dismissing the complaint, it is certainly something for Plaintiff to keep in mind in considering how much of his own resources to sink into this case, as he will need evidentiary support for any claim to more than the $200 minimum statutory damages available under 17 U.S.C. § 504(c)(2).

**IV.    Conclusion**

For these reasons, Defendants' motion to dismiss [21] is granted in part and denied in part. The claim for contributory copyright infringement and the claim for direct copyright infringement as to the Cubs only are dismissed. The claim for vicarious copyright infringement and the claim for direct copyright infringement against Lifrak will be allowed to proceed. This case is set for status hearing on February 20, 2020 at 9:00 a.m.

Dated: February 4, 2020

_____
Robert M. Dow, Jr.
United States District Judge

13